**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| GMT LOGISTICS, INC., a Missouri | ) | |
| Corporation, and Ivan Markovic, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| Giuliano V. Djurkovic a/k/a Vlad "Duke" | ) | |
| Djurkovic a/k/a Giuliano Vlad Montenegro, | ) | |
| PNC Financial Services Group a/k/a PNC Bank, | ) | |
| Tomislav Todorovic, Igor Boskovic, | ) | Case No. |
| AAA Logistics Group, Inc. a/k/a AAA Freight Inc.. | ) | |
| a/k/a AAA Equipment a/k/a AAA Truck Sales LLC, | ) | |
| AAA Holding, LLC, Antonije Keljevic, | ) | **Jury Trial Demanded** |
| Alex Petrusevski, Vlad Kostic, TRU Funding, LLC, | ) | |
| UnitedWS Inc., Boris Jager, | ) | |
| Verizon Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

===================================

**<u>VERIFIED COMPLAINT</u>**

For its Complaint, Plaintiff GMT Logistics Inc. and Ivan Markovic state and allege as follows:

**NATURE OF THE CASE**

This action arises from the business identity theft perpetrated by Defendant, Giuliano Djurkovic and several associates, who conspired to defraud Plaintiff Ivan Markovic by assuming his business and personal identity when Plaintiff traveled to Serbia in July of 2020. Djurkovic had commenced the scheme almost immediately, forging Markovic's name on documents provided to or drafted by various Defendants herein who knew Plaintiff Markovic or Defendant Djurkovic. Nonetheless, they participated in Djurkovic's conspiracy to steal hundreds of thousands of dollars, taking out loans in the name of Plaintiff's trucking company, GMT Logistics, Inc. After securing

commercial loans of $250,000 and $150,000, Djurkovic applied for Unemployment with the State of Missouri as Ivan Markovic, and took PPP loans in the name of the Plaintiffs. Djurkovic then purchased trucks, trailers and equipment that were sold and leased for profit with the assistance of Serbian associates, purchased luxury automobiles, and drained funds from GMT Logistics' bank account and credit card and incurred multiple other debts in the name of Markovic and GMT Logistics, Inc. It also appears that Plaintiffs' accounts were used to launder money from other sources, or from additional loans taken that have not yet been discovered.

When Plaintiff reported these crimes to parties who had knowingly or unknowingly assisted Djurkovic, some parties threatened him, refused to provide documents to Markovic despite the fact that his company GMT Logistics was their customer or client, while PNC bankers told him to drop his investigation and "let it go" before informing Plaintiff that Djurkovic had hired someone to kill him.

The scheme was reported to the FBI, the State prosecutorial offices, State Attorney Generals and local police departments in both Illinois and Missouri.

The identity fraud scheme led to damaging business debt, losses and third-party claims against the Plaintiffs. Defendants' conduct has terrorized Plaintiff Markovic to the extent that it stole his livelihood, his creditworthiness and his goodwill, collection actions, and attacks on his good reputation. Markovic's days since becoming aware of the thefts are filled with stress, anxiety and constant vigilance as to the next events occurring and a terrorized feeling of loss of control over his life.

## JURISDICTION and VENUE

1. There are two bases for diversity jurisdiction in this case: (a) the parties' citizenship is completely diverse and the amount in controversy exceeds $75,000, pursuant to 28 U.S.C. §1332;

and (b) a substantial part of the events or omissions action arises under Federal Law pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

2.   There are multiple bases supporting venue in this District, including:

    a.   Defendants AAA Freight, TRU Funding, Verizon N.A. have their principal place of business in this District;

    b.   Upon information and belief, Defendants who are agents and employees of the above companies reside in this District. 28 U.S.C. §1391(a)(3);

    c.   A substantial or majority of the events or omissions acts giving rise to these claims occurred in this District. 28 U.S.C. §1391(a)(2); and,

    d.   Defendant Giuliano Djurkovic resided in Illinois during the relevant period of these events.

### THE PARTIES

3.   Plaintiff Ivan Markovic resides in Hazelwood, Missouri, and during all relevant times hereto, operated a solely owned transportation company entitled GMT Logistics, Inc. located at 100 4th Street, St. Louis, Missouri 63102.

4.   Defendant, Giuliano V. Djurkovic a/k/a Vladimir "Duke" Djurkovic a/k/a Giuliano "Montenegro" (herein as "Djurkovic") previously resided at 3577 N Milwaukee Avenue in Chicago, Illinois and recently purchased a home in Hollywood, Florida after committing the crimes alleged herein.

5.   Defendant PNC Financial Services and PNC Bank (herein as "PNC Bank") has a reported address at One PNC Plaza, 249 Fifth Avenue, Pittsburgh PA, and a headquarters in New York, NY, with branch offices in Illinois where the events herein occurred.

6.   PNC Bank employees Tomislav Todorovic and Igor Boskovic (with PNC bank, referred to herein as "the PNC Defendants) worked at the Belmont Avenue and Bensenville, Illinois PNC

3

branch offices at the time of the predicate acts herein. Upon information and belief those employees also reside in Illinois.

7.     AAA Logistics Group, Inc. a/k/a AAA Freight a/k/a AAA Funding a/k/a AAA Truck Sales, LLC and its related companies or subsidiaries, with headquarters at 11835 Central Park Avenue, Merrionette Park, IL and South Holland, IL. The AAA companies shall be referred to as "AAA" herein.

9.     Antonije Keljevic, upon information and belief, resides in Illinois and is the co-owner of both AAA and TRU Funding LLC that transacted business and/or are headquartered in Illinois.

10. Alex Petrusevski, a manager of AAA, resides and works in Illinois, and transacted business with Giuliano Djurkovic and other Defendants in Illinois.

11.     TRU Funding LLC, upon information and belief, is located at 9550 W. Sergo Drive, Ste. 104, McCook, Illinois 60525, and is co-owned by Vlad Kostik and Antonije Keljevic, owner of AAA companies.

12.     Vlad Kostik is a Director of TRU Funding LLC, that operates in Illinois and Kostik transacted business with Defendant Djurkovic herein.

11.     UnitedWS is a trucking company incorporated in Dallas Texas. Upon information and belief, UnitedWS has its headquarters in Davenport, IA but transacted business in Illinois with the parties herein.

13.     Boris Jager is the owner of UnitedWS, a trucking leasing company. Upon information and belief, Boris Jager has resided or operated out of the same address on North Milwaukee Avenue in Chicago, Illinois, where identity thief Djurkovic resided during the events and transactions detailed herein.

## FACTS RELATED TO ALL COUNTS

**Acquaintance of Giuliano and Plaintiff Markovic**

14.    Ivan Markovic incorporated his trucking company, GMT Logistics Inc. on July 1, 2019, located at 100 S. 4th Street, Suite 550, St. Louis, Missouri 63102. Prior to that, Markovic was the only driver with one truck, making long haul and short haul trips throughout the United States.

15.    Plaintiff met Giuliano Djurkovic in 2008, when Plaintiff arrived in Chicago. Between 2008 and 2017, Markovic and Giuliano kept in touch and eventually became friends.

16.    In 2017, Djurkovic told Markovic he needed work and Markovic helped him get some trucking jobs.

17.    Djurkovic was responsible for his own his trucking jobs; Djurkovic was neither an employee nor an independent contractor of Plaintiff Markovic or GMT Logistics, paying Markovic a percentage for use of his truck, fuel and insurance.

18.    In July of 2019, Markovic registered his company as GMT Logistics, Inc. in the State of Missouri.

19.    Also during 2019, Djurkovic contacted a Serbian acquaintance, a law firm paralegal, seeking an attorney to file for bankruptcy relief. The paralegal's employer, a law firm who had assisted with Djurkovic's immigration paperwork years earlier, did not agree to represent Djurkovic in the bankruptcy work or in any future matter.

20.    After 11 months with Djurkovic purportedly driving his own truck, but seldom working, Plaintiff Markovic informed Djurkovic that he would be spending several months visiting his son and family in Serbia in July 2020 through the end of the year.

21.   In early 2020 Djurkovic, soon after learning that Markovic would be in Serbia for several months during the COVID-19 pandemic and unbeknownst to Markovic, went to the same paralegal to ask for assistance with "hiding money."

22.   The paralegal and his employer law firm refused to assist Djurkovic, particularly in light of his request for assistance in filing for bankruptcy several months earlier.

**Discovery of Debts and Involvement of PNC Bankers**

23.   In late December 2020 while in Serbia, Plaintiff began receiving notices from PNC Bank and Verizon of past due account notices with inexplicable balances.  Plaintiff reviewed his account information at PNC and called his PNC banker, another Serbian named Tomislav Todorovic.

24.   In late December 2020, Todorovic or "Toma" as he was known, initially pretended to be surprised by Markovic's call. Plaintiff asked Todorovic to check his accounts as he believed the notices were in error.

25.   By phone, Toma asked Plaintiff, "What's happening with Giuliano?" Plaintiff Markovic said, "Nothing, usual stuff. Why you ask me?" After a few minutes, as if discovering the PNC loans to GMT Logistics for the first time, Todorovic said, "I think Giuliano is up to something" and, "You'd better come back to the U.S."

26.   After making some inquiries on State of Missouri websites, Plaintiff discovered UCC filings for new loans issued to GMT Logistics while Plaintiff was out of the country, seeing unfamiliar addresses for GMT on the documents, as well as other odd events, Plaintiff Markovic immediately returned to the States.

27.   On January 25, 2021, Plaintiff spoke to Todorovic who worked out of the PNC branch at 3820 W. Belmont in Chicago.  Plaintiff asked to meet with Todorovic and was told that he was not available but to make an appointment with the Bensenville branch.

28.     On January 25, 2021, Plaintiff received an appointment and met with Igor Boskovic at 5:00pm at the PNC Bensenville branch office.  Boskovic called Todorovic to discuss the transactions that PNC had authorized involving Plaintiff's company and his signature.

29.     Plaintiff discovered that Mr. Todorovic had assisted Defendant Giuliano Djurkovic in obtaining an SBA loan through PNC bank in the amount of $150,000 issued to GMT Logistics, LLC, with a forged e-signature "Ivan Markovic," and using the wrong address for GMT Logistics.

30.     Todorovic insisted that they should not talk about the loans at the bank but should meet at a restaurant nearby.  Todorovic texted Ivan to meet at the Oberweis Ice Cream and Dairy Store on Waukegan Road.

31.     On January 26, 2021, while meeting with Plaintiff at Oberweis, Todorovic told Markovic that he should "leave it alone" or "forget everything" or "chill everything out" and not pursue Djurkovic, saying, "Giuliano hired a hitman" to kill Markovic.

32.     That same evening, immediately after the meeting with PNC banker Todorovic, Plaintiff drove by Djurkovic's apartment at 3577 N. Milwaukee in Chicago and saw Djurkovic sitting in his 2nd story window and cleaning his gun.

33.     Subsequent Facebook posts by Djurkovic contained a video of Djurkovic cleaning his gun to a rap song with the words "Gonna Pop Ya" etc.

**Verizon Sells New Phones and Service to Giuliano Djurkovic, who Signs Contracts as "Ivan Markovic" and Provides a New Company Mailing Address.**

34.   When Verizon's Invoice Notice was emailed to the iCloud address, at a rarely used company email, MRVILAND99@iCloud.com.  The message said, "HI GIULIANO, THANKS FOR YOUR PROMISE TO PAY" as a confirmation for charges on Verizon account #2051-0001. The amount due was $2,077.39 and continued to increase.

35.   On February 13, 2021, Plaintiff visited Verizon to reconnect his cellular number, and discovered that his password had been changed.

36.   When Plaintiff visited that Verizon store to obtain information about the fraud, Verizon employees told him, "Since you don't have the password, we cannot assist you."

37.   The following week, Plaintiff also discovered that, on February 15, 2021, a Verizon store at 4000 N. Cicero Avenue, Chicago, Illinois, in Portage Park, had sold 4 new iPhones to his company, GMT Logistics, and that the phone contracts contained his forged digital signature and the password to his account had been changed again.

38.   In multiple subsequent calls by Markovic and his attorney from February to August of 2021, Verizon responded that it was unaware of the prior reports, even though the prior calls had been recorded.  Verizon's Fraud Department representative told Plaintiff, "We can't disconnect the new phones registered to your company" [GMT Logistics Inc.], "so you'll just have to sue Verizon."

39.   Verizon and its employees, either knowingly or with gross negligence, (a) failed to request photo identification from the identity thief to prove the purchaser's name was the one on the contract; and, (b) failed to verify the customer's address for GMT Logistics Inc. or its owner, Ivan Markovic, that were already in Verizon's records on Plaintiff's existing account.

40.   Upon information and belief, the Verizon employees involved in setting up new corporate account services, issuing new phone numbers and selling 5 iPhones to Djurkovic, knew or should have known Djurkovic's e-signature "Ivan Markovic" was unauthorized and a forgery.

**TRU Funding Conspires with Djurkovic, Allowing Thief Djurkovic to Sign as Ivan Markovic**

41. On or about May 25, 2021, Plaintiff met Boris Jager, owner of UnitedWS, at a restaurant in LaGrange named Skardarlya. Jager asked Markovic, "Have you seen Giuliano?"

42. When Markovic confirmed seeing Djurkovic and detailed the theft he had committed with PNC bank-generated SBA disaster loan of $150,000 and Verizon, Jager proclaimed, "I'm going to fire him!" meaning Giuliano Djurkovic.

43. Markovic had no idea that Djurkovic had been working for UnitedWS, since they had spoken approximately 10 times while Plaintiff was in Serbia and Djurkovic never mentioned he was the "President" of UnitedWS.

44. While discussing the identity theft during that meeting, Jager said, "Oh my God, Giuliano just sold 5 trailers to me!"

45. Jager later provided copies of the UnitedWS contracts with AAA for the purchase and leasing of 5 trailers with VIN numbers as described in the UCC filings, bearing the signature of AAA Manager Alex Petrusevski, and certain emails between Giuliano Djurkovic and AAA agents.

46. Upon further investigation of the apparent identity theft, Plaintiff found a UCC-1 Financing Statement for a loan of $250,000 filed by TRU Funding, dated October 23, 2020.

47. The contracts between GMT Logistics and TRU Funding (by its owner Vlad Kostik) dated October 20, 2020, included a personal "Guaranty Agreement" purportedly e-signed on 10/20/20, and a "Notification of Assignment" e-signed on 10/23/20, with the forged digital signature of "Ivan Markovic" and bearing his home address.

48. Kostik knew Plaintiff prior to signing the document with Djurkovic, who forged Markovic's digital signature.

49. The TRU Funding loan documents and filings used Plaintiffs' company name, GMT Logistics, Inc., but did not include the registered address of the business, 100 4th Street, St. Louis,

Missouri. Registrations of the loan refer to an Djurkovic's new address at 2 N. Oak Street in Chicago's Gold Coast.

**AAA Truck Sales and Leasing Trailers to UnitedWS**

50. Upon information and belief, Djurkovic went to AAA Truck Sales in February 2021 to launder the money obtained through fraudulent loans issued to GMT Logistics Inc. but received by Djurkovic.

51. According to documents provided by Boris Jager, AAA leased the 5 trailers to UnitedWS, with an option to purchase, charging monthly installments of $2,205 for each of the trailers.

52. AAA assisted Djurkovic in obtaining an additional loan through TRU Funding, a company that shared owners and/or executives with AAA.

53. On April 13, 2021, AAA prepared and sent Djurkovic a Power of Attorney ("POA") in relation to the transaction, establishing that AAA and Alex Petrusevski knew that Djurkovic was not the owner of GMT Logistics Inc.

54. A few hours later on the same day, upon seeing the emailed the POA form from Alex Petrusevski at AAA, Djurkovic responded, "Thanks bro. Next time send a text so I will see it. I was out in the field."

55. In signing the Assignment, Guarantee and Power of Attorney from Petrusevski (attempting to cover up the February and March transactions), Plaintiffs were damaged by the transfer of assets, funds and fraudulent documents via email, text, wire by Defendants Djurkovic, TRU Funding, UnitedWS and AAA.

56. Upon information and belief, the trailers were heavily driven under the AAA leases, possibly logging over 102,000 miles over several months. Despite that fact, in May of 2021, UnitedWS' owner Jager told Markovic that he didn't make money from the trailer leasing.

57.  Djurkovic could not have carried out the identity fraud, conversion and money laundering without the assistance and participation of the Defendants herein.

58.  Defendants acted individually and in concert to defraud Plaintiff, either knowingly, intentionally or with gross and willful disregard for the security of their customer, GMT Logistics Inc. and its owner, Ivan Markovic.

59.  Plaintiff Markovic has been directly damaged by the Defendants' conduct.

60.  Defendants' scheme began prior to October 23, 2020 and continues to the present date.

61.  Plaintiff did not discover the AAA to UnitedWS transaction until May of 2021, or may not yet know all the details, because Defendants failed to notify Plaintiff of the transactions affecting his company GMT Logistics and concealed their actions from Plaintiff.

62.  Defendants' fraudulent and/or grossly negligent concealment led to Plaintiff's delayed discovery of the identity theft.

63.  Defendants' acts of concealment made it impossible for Plaintiff to discover all the details and facts concerning their crimes.

64.  Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

65.  Djurkovic assumed the identity of IM and his company GMT Logistics LLC in order to accomplish a fraud upon plaintiff.

66.  Djurkovic conspired with, or convinced Defendants herein to perform criminal acts for his own financial benefit and the benefit of Defendants.

67.  Acting alone or with Defendants and other unknown accomplices, Djurkovic entered into multiple contracts on behalf of GMT Logistics Inc. to obtain cash and loan proceeds, and purchasing 5 trailers and 2 trucks that were transferred to AAA for resale and leasing.

68.  Defendant violated RICO and Plaintiff was injured as a result.

69.  Each Defendant violated 18 U.S.C. 1962(c) by the acts described in the preceding paragraphs, and as further described below.

## COUNT I
## FEDERAL CIVIL RICO, 18 U.S.C. §1962(c)
## All Defendants

**The Enterprise**

70.  Defendants AAA Trucking, UnitedWS, TRU Funding, the PNC Bank Defendants and Verizon, formed an association in fact with one or more of the Defendants for the common and continuing purpose set forth herein and thus constitute an enterprise within the meaning of 18 U.S.C. §1961(4) engaging in the conduct of their affairs through a continuing pattern of racketeering activity. There may be additional members of the enterprise who are unknown at this time.

71.  In addition, the AAA defendants may have controlled companies that constituted a separate enterprise within the meaning of 18 U.S.C. §1961(4).

72.  Each enterprise has engaged in, and their activities have affected, interstate commerce.

**Pattern of Racketeering Activity**

73.  Defendants acted individually and in concert to defraud Plaintiff. Defendant has been directly damaged by the Defendants' conduct.

74.  Defendants' scheme began prior to October 23, 2020 and continues to the present date.

75.  Plaintiff did not discover the extent of the fraud until January 2021 because Defendants concealed their actions and Defendants' fraudulent concealment led to Plaintiff's delayed discovery of the identity theft.

76.   Defendants' acts of concealment made it impossible for Plaintiff to discover all the details and facts concerning their crimes.

77.   Defendants violated RICO and Plaintiffs have suffered as a result of their actions.

78.   Each Defendant is a "person" or entity under the statute and capable of holding legal or beneficial interests in property pursuant to 18 U.S.C. §1961(3) [define Enterprise?]

79.   Defendants have violated 18 U.S.C. §1962(c)? by the acts alleged in the prior paragraphs of this complaint.

80.   Defendants acted individually and in concert to defraud Plaintiff. Defendant has been directly damaged by the Defendants' conduct.

81.   Defendants' scheme began prior to October 23, 2020 and continues to the present date.

82.   Plaintiff did not discover the extent of the fraud until 2021 because Defendants concealed their actions and Defendants' fraudulent concealment led to Plaintiff's delayed discovery of the identity theft.

83.   Defendants' acts of concealment made it impossible for Plaintiff to discover all the details and facts concerning their crimes.

**Pattern of Racketeering Activity**

84.   Defendants who are persons who are associated with or employed by the Enterprise did knowingly, willfully and unlawfully participate in the affairs of the Enterprise through a pattern of racketeering activity

85.   The Defendant's racketeering activity was made possible by the regular and repeated use of the resources of the Enterprise. Defendants had the specific intent to engage in the conduct alleged herein that constitute RICO violations. 18 U.S.C. §1961(1), §1961(5) and §1962(c).

**Predicate Act: Use of Mail and Wire Fraud in violation of 18 U.S.C. §§1341 and 1343**

86.   Defendants committed acts constituting indictable offenses in order to obtain money from Plaintiffs and using the business name and accounts to launder money, by means of false or fraudulent pretenses, representations or promises. For the purpose of executing their scheme or artifice, Defendants caused the delivery and receipt of documents, funds, trailers and trucks by the U.S. mail or across State lines by private or commercial interstate carriers.

87.   Defendants also knowingly transmitted or caused to be transmitted by means of wire communications in interstate commerce various writings, signs and signals.

88.   Defendants' acts were done intentionally and with foreseeable knowledge that in the ordinary course of business, the actions were sufficient to fulfill or advance Defendants' scheme or artifice.

89.   Defendants carried out their scheme in different states and could not have done so without using the U.S. Mails, interstate bank wires, the internet and/or interstate carriers across state borders.

90.   Defendants Giuliano Djurkovic, Verizon, PNC Bank, AAA, TRU Funding, Future Insurance Group through individuals Dragan Milosovic, Vlad Kostik, Antonije Keljevic, Alex Petrusevski, Boris Yager, Igor Boskovic and Tomislav Todorovic, communicated amongst themselves, and had deceptive communications with Plaintiff Ivan Markovic, in furtherance of the scheme to defraud Plaintiffs.

91.   Defendants' communications were typically transmitted electronically, via email, texts, social media, phone and physical interstate travel and transport of assets.

92.   Defendants caused to be transmitted by wire forged corporate filings with the Missouri Secretary of State and Department of Transportation in September and October 2020.

93. Defendants caused the Trailer Lease Agreements to be disseminated from Illinois, to Davenport, Iowa where Boris Jager signed the documents knowingly containing Plaintiff Markovic's forged signature.

94. Defendants caused to be delivered the trailers acquired from Georgia to Illinois and to Davenport Iowa, and forged loan documents submitted to PNC Bank with the help of employees Tomislav Todorovic and Igor Boskovic during the ongoing participation in the scheme.

95. Defendants also caused PNC Bank to transmit loan proceeds to Djurkovic rather than to the existing customer GMT Logistics and known owner Ivan Markovic, to an address that was not in any of the trusted documents available on the internet concerning GMT Logistics.

96. Defendants, on information and belief, obtained multiple PPP loans in the name of GMT Logistics and similar names that owner Ivan Markovic did not apply for or request.

97. Upon information and belief, Defendants sought to open multiple lines of credit, and the credit agencies show that generated over 95 credit inquiries on the Plaintiffs' accounts.

98. Upon information and belief, Defendants opened accounts with Wells Fargo, Amex, Progressive Insurance, Future Insurance Group and Agile Insurance among others, in the names of Markovic and GMT Logistics, Inc.

**Predicate Act: Transport and Receipt of Stolen Property in Violation of 18 U.S.C. §§2314 and 2315.**

99. Defendants committed acts constituting indictable offenses under 18 U.S.C. §§2314 and 2315 in that having devised or intending to devise a scheme or artifice to defraud Plaintiffs or obtain money from Plaintiffs through false and or fraudulent pretenses, Defendants transported or caused to be transported in interstate commerce money having a value of $5,000 or more, that was stolen, converted or taken by fraud and forgery.

15

100. Defendants also transported money and physical tangible property they received knowing it was stolen, converted or taken by fraud.

101. These actions were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice.

102. Upon information and belief, Defendants involved other parties that may have participated with or without knowledge of the scheme or enterprise. These parties received payment for their participation in the scheme and include insurance brokers Future Insurance Group.

103. Plaintiff has been damaged as a direct and proximate result of Defendants' knowing participation in a scheme to secure loans in Plaintiffs' name, to fund purchases of trucks and trailers, to resell or lease those assets to convert the illegal loans to cash proceeds.

**TRU Funding and AAA: Common Ownership and Coordination**

104. AAA trucking is owned by Antonije Keljevic, who has known the Plaintiff for over 10 years since Plaintiff emigrated from Serbia on a U.S. NFL football draft to Texas.

105. Upon information and belief, TRU Funding is also controlled by AAA's owner Keljevic, who was the originator of the loans and prepared the loan paperwork for Defendant Djurkovic.

106. AAA and TRU Funding assisted the scheme by generating a loan and all documentation to Giuliano Djurkovic, a bankrupt person with poor credit and no proof of agency, to borrow money as an agent-owner of GMT Logistics.

107. Subsequently a power of attorney was provided by AAA to Djurkovic for his signature, but Djurkovic had not signed his own name on the contracts, so the Power of Attorney was merely a deceit to paper over the fraud.

108.  AAA issued Invoices to UnitedWS on February 15, 2021 in furtherance of the scheme to profit from the fraudulent GMT Logistics Inc. loan proceeds, while GMT and Markovic were made liable for their repayment to PNC and Wells Fargo.

109.  The TRU Funding packet included an IRS Form 8821, "Authorization for Tax Returns" permitting TRU to obtain Plaintiffs' returns for years 2017 through 2022.

110.  Revenues from the TRU Funding loan-to-leasing scheme were paid to AAA, as Seller of the trailers.

111.  The AAA trailers "purchased" by UnitedWS from Djurkovic (on AAA contracts) were returned to AAA after UnitedWS leased them out for several months and made "hardly any money" according to owner Boris Jager.

112.  During Plaintiff Markovic's visit to AAA's offices in 2021, Giuliano Djurkovic was seen on the premises.

113.  Plaintiff spoke to Boris Jager on several occasions in May of 2021 by phone and at UnitedWS in Iowa during the weekend of May 24th.

114.  By phone in May of 2021 Jager told Plaintiff that he had the trailers and Plaintiff should "come pick them up."  However, by October of 2021 Jager stated that he had "returned the trailers to AAA" as he "no longer wanted to be involved in this."

115.  Plaintiff reasonably and justifiably relied on Defendant Jager's false pretenses and deceptive communications and has been damaged as a direct and proximate result of Defendants' participation in the Enterprise.

**United WS, Boris Yager**

116. UnitedWS is owned by Boris Jager, who originally told Markovic that he purchased trailers from Djurkovic, and that he was going to fire him after hearing about the fraudulently-obtained loans.

117. However, Jager already had documentation of the TRU Funding loan, and later claimed he did not hire Giuliano Djurkovic as "President" and that the emails sent by Djurkovic with were "fake."

118. Boris Jager, through UnitedWS, assisted Giuliano Djurkovic and AAA Trucking in laundering funds by purchasing and leasing the trailers obtained with fraudulent loans.

119. Pursuant to the instructions on the invoices, UnitedWS paid AAA Trucking for the right to purchase and lease the 5 trailers.

WHEREFORE, Plaintiffs respectfully requests that the Court:

A. Award compensatory, consequential, exemplary and punitive damages to Plaintiff in an amount to be determined at trial;

B. Enter Punitive Damages sufficient to deter certain Defendants from committing intentional unlawful conduct in the future;

C. Award attorneys' fees and costs to Plaintiff; and,

D. Enter such other relief as is just and proper.


**COUNT II**
**NEGLIGENCE OF RICO CO-DEFENDANTS**
**(PNC Bank, Tomislav Todorovic, Ivan Boskovic)**

120. Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

121. Prior to the wrongful acts alleged herein, Ivan Markovic maintained a deposit accounts at PNC Bank for his business and personal use.

122.  Defendant PNC Bank owed its customer Plaintiff Markovic and his company GMT Logistics the duty of reasonable care in the administration and handling of their accounts including but not limited to, verifying signatures on account drafts, utilizing due diligence in notifying Plaintiff Markovic of unusual transactions, rejecting loan applications which it knew or should have known to be fraudulent, and employing sufficient measures to prevent unauthorized access to Plaintiff's account.

123.  Defendant breached its duty owed to Plaintiff by failing to use reasonable care in the administration and handling of Plaintiffs' accounts; by failing to notify Plaintiffs of unusual account activity; by failing to verify the signature of Ivan Markovic before authorizing loan transactions or permitting account withdrawals; and by generally failing to employ sufficient measures to protect Plaintiffs from the unauthorized access to their account.

124.  As a direct and proximate cause of Defendants actions and inaction, as set forth above, Giuliano Djurkovic obtained unlawful access to existing accounts and was permitted to open loan accounts, allowing Djurkovic to obtain over $420,000 in loans and thousands of dollars in cash.

125.  PNC employees Tomislav Todorovic and Igor Boskovic were familiar with Plaintiff Markovic and did nothing to contact Markovic to verify its transactions with Giuliano Djurkovic that were purportedly on behalf of GMT Logistics Inc.

126.  Plaintiff notified PNC of the unauthorized use of his signature, the apparent forgery of his signature, and the bank agents involved in allowing the perpetrator to obtain these loans.

127.  Plaintiff's attorney notified PNC in writing of the unlawful actions of its employees in July 2021, and by phone, but PNC refused to act or to respond to the report of illegal activity.

128.    PNC's failure to exercise its duty of care toward its customer and refusal to take action in response to the calls and written communications resulted in continuing damages to Plaintiff, including:

      a. Use of the loans extended by PNC to purchases vehicles, i.e., trucks and trailers;

      b. Use of the funds and the assets to secure additional loans;

      c. Use of the credit line to access additional credit, including purchase of a home in Hollywood, Florida by the perpetrator; and,

      d. Use of the trucks and trailers via transfer and leasing to launder money.

    Wherefore, Plaintiffs request judgment against PNC Bank and its employees, Tomislav Todorovic, Ivan Boskovic, in an amount exceeding $150,000 plus costs and interest.

## COUNT III
## NEGLIGENCE OF CO-DEFENDANTS
### AAA, TRU Funding

129. Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

130. In the unlikely event that AAA ownership and management did not know of the scheme to defraud Ivan Markovic and GMT Logistics, AAA employees knowingly cooperated with Giuliano Djurkovic intentionally and with total disregard for the standards of due care required of a merchant and its Lender under the UCC and applicable consumer fraud acts.

131. AAA failed to exercise due care in the following ways: (i) relying on a signature by a person other than the individual requesting changes to the account, (ii) failing to send an alert notice to the customer's primary phone number on the existing account before making changes to GMT Logistics Inc's account; (iii) communicating with its customer at an address different than the registered address of GMT Logistics or its owner that were already in Verizon's records on

Plaintiff's existing account, (iv) failing to obtain a power of attorney or other proof of agency prior to the sales transaction and service changes made to the account of its business customer.

132. Upon information and belief, AAA employees aided and abetted Djurkovic's identity theft, including Alex Petrusevski, by permitting Djurkovic to take loans out for a company he did not own, and conduct business under the name GMT Logistics, to launder the loan made to GMT Logistics by purchasing 5 trailers and 2 trucks (that are known of at present), transferring the trailers to UnitedWS for leasing and presumably transferring the cash to Djurkovic.

133. Despite multiple requests by the actual owner of the account to cancel the service to the unauthorized phones, Verizon representative stymied Plaintiff from obtaining relief, allowing the identity theft to continue and preventing Markovic from obtaining the Verizon records.

134. In each of multiple calls and visits to Verizon, representatives told Plaintiff that, (i) Verizon had no record of the prior calls and complaints, (ii) there was nothing they could do without the account's (stolen) password and that (iii) Plaintiff would have to sue Verizon in order to obtain his account's records or to shut off the unauthorized cell phones.

Wherefore, Plaintiffs request judgment against Verizon in an amount exceeding $150,000 plus costs and interest.

## COUNT IV
## NEGLIGENCE OF CO-DEFENDANTS
### (Verizon)

135. Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

136. Verizon employees failed to exercise due care in the following ways: (i) relying on a signature by a person other than the individual requesting changes to the account, (ii) failing to

send an alert notice to the customer's primary phone number on the existing account before making changes to GMT Logistics Inc's account; (iii) communicating with its customer at an address different than the registered address of GMT Logistics or its owner that were already in Verizon's records on Plaintiff's existing account, (iv) failing to obtain a power of attorney or other proof of agency prior to the sales transaction and service changes made to the account of its business customer.

137.    Upon information and belief, the Verizon employees conspired with Giuliano to assist him in accomplishing the identify theft by permitting Djurkovic to make changes to the account as an administrator, giving him access to the account management, selling new phones and new services to Djurkovic.

138.    Despite multiple requests by the actual owner of the account to cancel the service to the unauthorized phones, Verizon representative stymied Plaintiff from obtaining relief, allowing the identity theft to continue and preventing Markovic from obtaining the Verizon records.

139.    In each of multiple calls and visits to Verizon, representatives told Plaintiff that, (i) Verizon had no record of the prior calls and complaints, (ii) there was nothing they could do without his (stolen) password and that (iii) Markovic should sue Verizon to obtain further information.

WHEREFORE, Plaintiffs respectfully requests that the Court:

D.  Award compensatory, consequential, exemplary and punitive damages to Plaintiff in an amount to be determined at trial;

E.  Award attorneys' fees and costs to Plaintiff; and,

D.  Enter such other relief as is just and proper.

**COUNT V**
**INJUNCTIVE RELIEF/**
**DISGOURGEMENT AND CONSTRUCTIVE TRUST**
**(Giuliano Djurkovic, AAA, TRU Funding)**

140.     Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

141.     In addition to the relief requested above, Plaintiffs request injunctive relief including but not limited to freezing Djurkovic's assets and bank accounts, prohibiting Defendants from signing the name GMT Logistics, Ivan Markovic, or from selling his Miami Florida real estate.

142.     As AAA has possession of the 5 trailers, and possibly the trucks that were purchased with fraudulent loans issued to GMT Logistics, the court should enter declaratory relief to permit the issue of a warrant for the seizure of the vehicles and trailers from AAA.

143.     United WS admitted to having possession of the trailers and being willing to release them to Markovic.

144.     On its own accord or at the urging of AAA, United WS returned the 5 trailers to AAA instead of releasing them to Plaintiff Markovic.

145.     A constructive trust is presumed to be created by operation of law when funds unlawfully acquired, or assets purchased with unlawfully acquired funds, are identified and retained by a party who is not the rightful owner of the funds or assets belonging to a plaintiff.

146.     Defendants' intentional and self-serving conduct is inequitable and therefore, properly the subject of a constructive trust by order of court.

147.     Plaintiff has no adequate remedy at law, and will suffer irreparable injury, if Defendants continue to conceal and dissipate assets belonging to Plaintiff Markovic or the

innocent creditors of GMT Logistics, unless a constructive trust is entered.  See, *All Seasons Excavating Co., v. Bluthardt, 229 Ill.App.3d 22, 593 N.E.2d 679 (1ˢᵗ Dist. 1992)*.

148.     Plaintiff has a likelihood of success on the merits, as Plaintiff is the sole owner of GMT Logistics and has proof of the identity theft of his accounts and/or assets, as he will be entitled to those accounts and wrongfully converted assets as damages if the proof should sustain the allegations of this Complaint.

149.     The balance of harms weight in favor of segregation of the funds and removal from unilateral control of Defendant Coulter, based on the risk to Plaintiff of unpaid loans for which McCotter is jointly liable.

150.     A constructive trust is presumed to be created by operation of law when funds of were wrongfully acquired or retained by Defendants, or were diverted to their personal use, without authority and to the detriment of Plaintiffs.

151.     Defendant's intentional and self-serving conduct is inequitable and therefore, properly the subject of a constructive trust by order of court.

152.     Plaintiff has no adequate remedy at law, and will suffer irreparable injury, if Defendant continues to conceal and dissipate assets resulting from the fraud, unless a constructive trust is entered.  See, *All Seasons Excavating Co., v. Bluthardt, 229 Ill.App.3d 22, 593 N.E.2d 679 (1ˢᵗ Dist. 1992)*.

153. Plaintiff has a likelihood of success on the merits, as Plaintiff has raised a fair question concerning his interest in the accounts and/or assets of Djurkovic, as well as the 5 trailers in the possession of AAA, as Plaintiffs will be entitled to those accounts as damages if the proof should sustain the allegations of this Complaint.

154. The balance of harms weight in favor of segregation of the funds and freezing accounts of thief Giuliano Vlad Montenegro Djurkovic, based on the continuing risk to Plaintiff of further theft and liability for loans for which Plaintiff and his company are borrowers of record.

WHEREFORE, Plaintiff prays for

A. Imposition of a constructive trust over accounts of Djurkovic and AAA pursuant to 735 ILCS 13/205;
B. for an order restraining Defendants from selling, transferring or dissipating assets or receivables without court supervision;
C. Giuliano Vlad "Duke" Djurkovic and for an order restraining Defendants from selling, transferring or dissipating assets or receivables without court supervision, including the new Florida property;
D. An order allowing Plaintiff to file a Lis Pendens notice in Florida concerning the Florida real estate recently purchased by Djurkovic; and,
E. for such other further relief as this Court shall deem just and appropriate.


**COUNT VI**
**CONVERSION**
**(Giuliano Djurkovic)**

155. Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

**Conversion of 2019 Tax Payments**

156. On March 31, 2018, Djurkovic referred Plaintiff to a new Accountant in Chicago, Emir Zubovic CPA.

157. Djurkovic told Markovic that CPA Zubovic had prepared his own tax returns, was doing his 2019 Tax Returns and he could take over Markovic's financial information.

158. Not long afterward, Djurkovic returned with a copy of the draft tax returns showing Plaintiff's tax due, Markovic signed the 2019 returns and turned over the $4,000 payment to Djurkovic for delivery to Zubovic.

159. Djurkovic told Plaintiff he had turned over the tax payment to Zubovic. In 2021 Plaintiff received notices that his 2019 taxes had not been filed or paid.

160. Djurkovic converted Plaintiffs' Verizon account, PNC Bank accounts and credit card accounts for his own use and furtherance of his scheme.

161. Plaintiffs owned those accounts and funds at the time of the conversion, and Djurkovic intentionally interfered with Plaintiffs' ownership.

162. Plaintiff Markovic was deprived of his right to control those accounts, and has been directly damaged by the Djurkovic's conduct above, as well as the fraudulent loans taken, assets removed from GMT accounts and credit cards used to obtain cash for his personal use.

163. Plaintiff did not discover the conversion until 2021 because Djurkovic concealed his actions.

164. Defendant Djurkovic has no legal right to retain the funds and assets taken from GMT Logistics', and unlawfully obtained as a result of forgery and deceit by Plaintiffs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that the Court:

F. Award compensatory, consequential, exemplary and punitive damages to Plaintiffs in an amount to be determined at trial;

G. Enter Punitive Damages sufficient to deter Djurkovic and certain Defendants from committing intentional unlawful conduct in the future;

H. Award attorneys' fees and costs to Plaintiff; and,

D. Enter such other relief as is just and proper.

Plaintiff Demands Trial by Jury on All Triable Issues.

Dated: December 12, 2021

GMT Logistics, Ivan Markovic,

By: _____

Attorney for the Plaintiff
Stephanie L. Matthews
155 N. Michigan Ave., Suite 9008
Chicago, IL 60601
Tel: (312) 316-7694
Email: slm@Matthewslawoffices.com