# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GMT LOGISTICS, INC., a Missouri Corporation, and Ivan Markovic, ) ) ) | |
| Plaintiffs, ) | No. 1:21-cv-06628 |
| v. ) ) | Hon. Mary M. Rowland |
| Giuliano V. Djurkovic a/k/a Vlad "Duke" ) Djurkovic a/k/a Giuliano Vlad Montenegro, ) PNC Financial Services Group a/k/a PNC Bank, ) Tomislav Todorovic, Igor Boskovic ) AAA Logistics Group, Inc. a/k/a AAA Freight Inc.. ) a/k/a AAA Equipment a/k/a AAA Truck Sales LLC,) AAA Holding, LLC, Antonije Keljevic, ) Alex Petrusevski, Vlad Kostic, TRU Funding, LLC ) UnitedWS Inc., Boris Jager, and ) Verizon Corporation ) | Jury Demanded |

**DEFENDANTS', UNITEDWS INC., AND BORIS JAGER, MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendants UnitedWS Inc. (hereinafter, "UnitedWS") and Boris Jager (hereinafter, "Mr. Jager"), by and through their attorneys Fornaro Law, and for their Memorandum of Law in Support of Their Motion to Dismiss Count I of Plaintiffs' Complaint with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6) state as follows:

## BACKGROUND

In the instant action, Plaintiffs, GMT Logistics, Inc., a Missouri corporation and Ivan Markovic (collectively hereinafter, "Plaintiffs") file a six-count Complaint against the above-captioned thirteen named Defendants. Specifically, Plaintiffs alleges a violation of the Federal Civil Racketeer Influenced and Corrupt Organization Act (hereinafter, "RICO") 18 U.S.C § 1962 (c) against all thirteen Defendants as their Count I, Negligence of RICO against Defendants, PNC Bank, Tomislav Todorovic, and Ivan Boskovic as their Count II, Negligence against Defendants, AAA and TRU Funding as their Count III, Negligence against Defendant Verizon as their Count

IV, Disgorgement and Constructive Trust against Defendants Giuliano Djurkovic, AAA, and TRU Funding as their Count V, and Conversion against Defendant Giuliano Djurkovic as their Count VI. In this regard, the only count plead against Mr. Jager or UnitedWS is Count I.

Plaintiffs allege that this action arises from the business identity theft perpetrated by Defendant, Giuliano Djurkovic and several associates, who conspired to defraud Plaintiff Ivan Markovic by assuming his business and personal identity when Markovic traveled to Serbia in July of 2020. *Compl.* at p. 1. Ultimately, Plaintiffs' Complaint only alleges three specific instances of the alleged identify fraud, none of which involve Mr. Jager or UnitedWS. First, Plaintiffs allege that Mr. Todorovic had assisted Defendant Giuliano Djurkovic in obtaining an SBA loan through PNC bank in the amount of $150,000 issued to GMT Logistics, LLC, with a forged e-signature of Markovic. *Id.* ¶ 29. Yet, Plaintiffs fail to allege the date that the alleged fraudulent SBA loan was obtained through PNC bank, however, it apparently occurred sometime before late December of 2020, as Plaintiffs began receiving notices from PNC in late December of 2020. *Id.* ¶ 23. Plaintiffs next alleged instance of identity fraud is by virtue of TRU Funding filing a UCC-1 Financing Statement for a loan of $250,000 dated October 23, 2020. *Id.* ¶ 46. Plaintiffs final alleged instance of identity fraud is that Djurkovic forged Plaintiffs' digital signature to obtain iPhones and wireless services from Verizon, without alleging when Djurkovic's actions allegedly took place. *Id.* ¶ 34 – 40.

However, Plaintiffs do not allege that Mr. Jager or UnitedWS were perpetrators of the alleged identity theft. *Id.* ¶ *1-164.* Instead, Plaintiffs allege that Djurkovic was the perpetrator of the alleged identity fraud. *Id.* ¶ 29, 46. Plaintiffs do not allege that Mr. Jager or UnitedWS had knowledge of the alleged identity theft, until after the alleged identify theft occurred. Specifically, Mr. Jager and UnitedWS were not informed of the alleged identity fraud until May 25, 2021,

approximately five months after the Plaintiffs began receiving notices from PNC. *Id.* ¶ 41, 42. In fact, Plaintiffs concede that neither Mr. Jager nor UnitedWS were aware of the allege fraud until after it allegedly occurred and alleges that when Markovic detailed the alleged theft perpetrated by Djurkovic that Mr. Jager proclaimed, I'm going to fire him! *Id.* ¶ 41, 42. In this regard, Mr. Jager's excited utterance corroborates his position that he was unaware of the alleged fraud until after it allegedly occurred.

Further, Plaintiffs undermined their allegations that Mr. Jager and UnitedWS were somehow involved in the alleged identity fraud by virtue of conceding that Mr. Jager and UnitedWS assisted and cooperated with Plaintiffs. Specifically, Plaintiffs admit that Mr. Jager and UnitedWS provided them with the contracts between UnitedWS and AAA regarding the 5 trailers. *Id.* ¶ 51, 113. Plaintiffs also allege that by October of 2021, UnitedWS returned the trailers to AAA, the lessor under the contracts. *Id.* ¶ 114. In this regard, many of Plaintiffs' allegations exonerate Mr. Jager and UnitedWS and ultimately establish that Plaintiffs are improperly attempting to impose liability against a *bona fide* purchaser for value, who assisted and cooperated with Plaintiffs by providing them with the contracts between UnitedWS and AAA regarding the 5 trailers, and who ultimately returned the trailers to AAA, the named leassor, as the result of the alleged ownership dispute. Accordingly, Plaintiffs' Complaint against Mr. Jager and UnitedWS must be dismissed.

## LEGAL STANDARD

In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. <u>Ashcroft v. Iqbal,</u> 556 U.S. 662, 678 (2009). This Court does not, however, accept a complaint's legal conclusions as true. <u>Cornielsen v. Infinium Capital Mgmt., LLC</u>, 916 F.3d 589, 603 (7th Cir. 2019). The court

is not required to ignore facts alleged in the complaint that undermine the plaintiff's claim. *See* Arazie v. Mullane, 2 F.3d 1456, 1465 (7th Cir. 1993). Slaney v. International Amateur Athletic Federation, 244 F.3d 580, 597 (7th Cir. 2001). Litigants may plead themselves out of court by alleging facts that may establish defendants' entitlement to prevail. Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998).

To survive a motion under Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." Yeftich v. Navistar, Inc., 722 F.3d 911, 915 (7th Cir. 2013). In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. 678, quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.; citing Twombly, 550 U.S. at 556. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678. "Nor does a complaint suffice if it tenders 'naked assertion[s] devoid of further factual enhancement." *Id*.

The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 makes it unlawful "to conduct" an "enterprise's affairs through a pattern of racketeering activity," where "racketeering" is defined as behavior that violates certain enumerated federal statutes or state laws addressing specific topics and bearing specific penalties. 18 U.S.C. §§ 1962(c); 1961(1). RICO is a "unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." Gamboa v. Velez, 457 F.3d 703, 705 (7th Cir. 2006). When Congress enacted RICO, it chose to supplement criminal enforcement of its provision by providing that "[a]ny person injured

in his business or property" by a RICO violation may seek treble damages and attorney's fees. 18 U.S.C. § 1964(c); Goren v. New Vision Intern., Inc., 156 F.3d 721, 726 (7th Cir.1998).

As the Seventh Circuit has discussed previously, "[w]hile Congress never intended RICO to be employed to allow plaintiffs to turn garden-variety state law fraud cases into RICO claims, the breadth of RICO's text and lure of treble damages and attorney's fees have proven irresistible to plaintiffs bent on federalizing such claims." Guaranteed Rate, Inc. v. Barr, 912 F.2d 671, 681 (N.D. Ill. 2012) (Kendall, J.) (internal citations omitted); see also Gamboa, 457 F.3d at 710 ("Civil RICO plaintiffs persist in trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions. While it is clear that the scope of civil RICO extends beyond the prototypical mobster or organized crime syndicate, it is equally evident that RICO has not federalized every state common law cause of action available to remedy business deals gone sour.")

In order to state a RICO claim, a Plaintiff must allege a cognizable injury to its business or property resulting from the: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Gamboa, 457 F.3d at 705. When the pattern of racketeering activity element is supported by allegations of fraud, those facts must be pleaded with the particularity required by Rule 9(b)". Muskegan Hotels, LLC v. Patel, 986 F.3d 692, 699 (7th Cir. 2021). The complaint must describe the "who, what, when, where, and how" of the fraudulent activity to meet the heightened pleading standard demanded by Rule 9(b)" *Id*. at 698.

**I.     Count I (RICO 18 U.S.C. § 1962(c)) of Plaintiffs' Complaint must be dismissed against Mr. Jager and UnitedWS for its failure to plead facts with particularity as required under Rule 9(b)'s heighten pleading standard.**

The Seventh Circuit has made clear that plaintiffs who bring a RICO complaint should inform each defendant of the specifics of the fraud and the nature of each defendant's alleged

5

participation in that fraud, and that complaints that lump all defendants together and did not specify who was involved in what activity should be dismissed. Vicom v. Harbridge Merchant Services, Inc., 20 F.3d 771, 777-778 (7th Cir. 1994); See also Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990). In a RICO action the complaint must, at a minimum, describe the predicate act with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud. Vicom, 20 F.3d at 771 quoting Graue Mill Dev. Corp. v Colonial Bank Trust Co., 927 F.2d 992 (7th Cir. 1991).

  In the instant action, Plaintiffs fail to allege facts regarding the alleged predicate acts of racketeering involving fraud with particularity as required under Rule 9(b)'s heighten pleading standard against Mr. Jager and UnitedWS. Instead, the thirteen various Defendants are lumped together in such a way that an individual Defendant is not apprised of their allegedly fraudulent acts. For instance, Plaintiffs allege Defendants have acted individually and in concert to defraud Plaintiff. Plaintiffs have [*sic*] been directly damaged by Defendants' conduct. *Compl*. ¶ 90. However, the nature of a fraud claim mandates the exact opposite, facts must be plead with sufficient specificity, particularity, and certainty to apprise the opposing party of what he is called upon to answer. Plaintiffs' pleading defect of lumping the thirteen Defendants together plagues Plaintiffs' Complaint. See, *Compl*. 75, 76, 77, 78, 80, 81, 82, 83, 84, 85, 86, 87, 89, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103. In this regard, Plaintiffs fail to plead facts that specifies Mr. Jager's or UnitedWS' alleged fraudulent conduct against Plaintiffs. As well as, Plaintiffs fail to explain the nexus that makes Mr. Jager or UnitedWS liable for the alleged acts of the other named Defendants. Ultimately, Plaintiffs Complaint is fundamentally flawed as it impugns all thirteen Defendants without explaining each Defendants' specific actions or fraudulent acts.

Plaintiffs, do however, make certain allegations that specifically name Boris Jager and UnitedWS. However, these allegations conclusory in their nature and fall well short of Rule 9(b)'s heightened pleading requirement. For instance, Plaintiffs allege that Defendants Giuliano Djurkovic, Verizon, PNC Bank, AAA, TRU Funding, Future Insurance Group through individuals Dragan Milosovic, Vlad Kostik, Antonije Keljevic, Alex Petrusevski, Boris Jager [*sic*], Igor Boskovic and Tomislav Todorovic, communicated amongst themselves, and had deceptive communications with Plaintiff Ivan Markovic, in furtherance of the scheme to defraud Plaintiffs. *Compl*. ¶ 90. In this regard, Plaintiffs fail to allege specifically, the alleged time and date these alleged communications allegedly occurred, the place where these alleged communications were allegedly disseminated, the manner and mode in which these alleged communications were disseminated and the content of the alleged communication perpetrating the fraud.

Similarly, Plaintiffs also baldly alleges that Boris Jager, through UnitedWS, assisted Giuliano Djurkovic and AAA Trucking in laundering funds by purchasing and leasing the trailers obtained with fraudulent loans. *Compl*. ¶ 118. However, Plaintiffs' Complaint is devoid of any facts that plausibly support this conclusion. As a result, these conclusory allegations fall well short of Rule 9(b)'s heightened pleading requirement. Plaintiffs again fail to allege specifically, the alleged time and date these alleged communications allegedly occurred in which either Mr. Jager or UnitedWS allegedly agreed to assist Djurkovic and AAA in allegedly laundering funds, the alleged terms of their alleged agreement, the place where these alleged communications were allegedly agreed to, or that Mr. Jager or UnitedWS had prior knowledge of the alleged identity theft scheme before it allegedly occurred.

Ultimately, Plaintiffs fail to allege how the transaction between UnitedWS, a trucking logistics company, and AAA, a lessor and seller of trucks and trailers, is at all fraudulent. In fact,

7

Plaintiffs undermine their allegation that it is a fraudulent transaction. Specifically, Plaintiffs allege that according to documents provided by Boris Jager, AAA leased the 5 trailers to UnitedWS, with an option to purchase, charging monthly installments of $2,205 for each of the trailers. *Id.* ¶ 51. In this regard, it is clear that Mr. Jager and UnitedWS are *bona fide* purchasers for value. Plaintiffs' claim is further undermined by its allegations that Mr. Jager and UnitedWS cooperated and assisted Plaintiffs in providing them with the contract between UnitedWS and AAA. *Id.* ¶ 45, 51, 113. Accordingly, Count I of Plaintiffs' Complaint against Mr. Jager and UnitedWS must be dismissed.

**II.     Count I (RICO 18 U.S.C. § 1962(c)) of Plaintiffs' Complaint must be dismissed against Mr. Jager and UnitedWS because Plaintiffs fail to adequately plead the substantive elements.**

Plaintiffs' action against Mr. Jager and UnitedWS must be dismissed because Plaintiffs fail to adequately plead the substantive elements that comprise a RICO action against Mr. Jager and UnitedWS. Specifically, Plaintiffs fail to plead a pattern of racketeering, as well as, Plaintiffs fail to plead that Mr. Jager or UnitedWS conducted or participated in the alleged enterprise's affairs.

**1. Plaintiffs fails to allege a pattern of racketeering.**

To allege a pattern of racketeering, a plaintiff must plead at least two predicate acts of racketeering activity within a ten-year period. 18 U.S.C. § 1961(5). A pattern of racketeering activity requires at the barest minimum two acts of racketeering activity. Lipin Enter. Inc. v. Lee, 803 F.2d 322, 323-24 (7th Cir. 1986) (citing 18 U.S.C. § 1961(5)); see also Meier v. Musburger, 588 F.2d 883, 900 (N.D. Ill. 2008). In general, however, much more than two such acts must be shown in order to demonstrate a pattern, as "two of anything seldom make out a pattern." Meier, 588 F.2d at 900; see also Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 n.14 (1985); Lipin, 803 F.2d at 323-24. To plead a pattern of racketeering activity, a plaintiff must "demonstrate a relationship between the predicate acts as well as a threat of continuing activity," a standard

8

known as the "continuity plus relationship" test. Menzies v. Seyfarth Shaw LLP, 943 F.3d 328, 337 (7th Cir. 2019).

The continuity prong is satisfied by (1) demonstrating a closed-ended series of conduct that existed for such an extended period of time that a threat of future harm is implicit, or (2) an open-ended series of conduct that, while short-lived, shows clear signs of threatening to continue into the future. Roger Whitmore's Auto Servs., Inc. v. Lake County, Ill., 424 F.3d 659, 673 (7th Cir. 2005); Engel v. Buchan, 778 F. Supp. 2d 846, 856 (N.D. Ill. 2011), aff'd, 710 F.3d 698 (7th Cir. 2013).

For the "close-ended" series of misconduct, courts consider whether there were enough predicate acts over a finite time to support a conclusion that the criminal behavior would continue. H. J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. at 242, 109 S. Ct. 2893; Midwest Grinding Co. v. Spitz, 976 F.2d at 1022–23. The focus, therefore, is on "the number and variety of predicate acts, the length of time over which they were committed, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries." Menzies, 943 F.3d at 342. 20 f.3d 771. Duration is the single most important aspect of the closed-ended continuity analysis. Vicom, 20 F.3d 781. The "predicate acts" must "extend over a substantial period of time;" "a few weeks or months" is considered insubstantial. H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 242 (1989). Examples of too short a duration include: Talbot v. Robert Matthews Distrib. Co., 961 F.2d 654, 663 (7th Cir. 1992) (no pattern where single scheme occurred over period of years); J.D. Marshall Intern., Inc. v. Redstart, Inc., 935 F.2d 815, 819 (7th Cir. 1991) (same over thirteen-month period); U.S. Textiles, Inc. v. Anheuser–Busch Cos., 911 F.2d 1261, 1266 (7th Cir. 1990) (sixteen-month period); Hartz v. Friedman, 919 F.2d 469, 473 (7th Cir. 1990) (eighteen-month

period); New Burnham Prairie Homes v. Vill. of Burnham, 910 F.2d 1474, 1478 (7th Cir. 1990) (several years).

For the "open-ended" series of misconduct, courts focus "not on what acts occurred in the past but on whether a concrete threat remains for the conduct to continue moving forward." Menzies, 943 F.3d at 337. This can be done by "showing that a defendant's actions pose a specific threat of repetition; that the predicate acts form part of the defendant's ongoing and regular way of doing business; or that the defendant operates a long-term association for criminal purposes." Menzies, 943 F.3d at 337; see also Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc., 831 F.3d 815, 828 (7th Cir. 2016). It is not enough to base an open-ended continuity theory on just one prior predicate act and an otherwise unsupported assertion that criminal activity will occur in the future. Menzies, 943 F. 3d at 337.

Although Plaintiffs make it seem as if they allege innumerable predicate acts to support their RICO action a review of their Complaint reveals otherwise. When all the verbiage is weeded out, Plaintiffs only allege that Markovic and his company GMT are allegedly the only two victims of one identity theft scheme perpetrated by Djurkovic, in which Djurkovic allegedly improperly secured two loans using Plaintiffs' identity in October of 2020 and sometime prior to late December of 2020, a period of no more than two months. Importantly, none of Plaintiffs' allegations impugn Mr. Jager or UnitedWS as the alleged perpetrators of fraud and none of Plaintiffs' allegations establish a threat of continuing activity. In this regard, Plaintiffs' Complaint fails under the close-ended and open-ended inquiry.

Specifically, under the close-ended inquiry, Plaintiffs' Complaint suffers from serious durational problems. Contrary to Plaintiffs' conclusory allegations that the alleged scheme continues to the present date, Plaintiffs, in actuality, only allege two predicate act of identity fraud

10

that occurred and ended within two months, October of 2020 to late December of 2020. *Compl.* ¶ 29, 46, 60. Further, Plaintiffs only allege one, identity theft, scheme. There are also too few victims in that the Plaintiffs' only alleged victim is Markovic and his company GMT. Ultimately, there are not enough predicate acts over a finite time to support a conclusion that the criminal behavior would continue and as a result Plaintiffs do not sufficiently plead facts under the close-ended inquiry.

Under the open-ended inquiry, Plaintiffs fatally plead themselves out of court by conclusively establishing that there is no threat of continuing activity by Mr. Jager or UnitedWS. Specifically, Plaintiffs alleges that the trailers have been returned by UnitedWS, to the lessor, AAA. *Compl.* 111, 114. Leasing the trailers is the only alleged involvement by Mr. Jager or UnitedWS. However, returning the trailers is also Mr. Jager's and UnitedWS' ending point. Accordingly, and in light of Plaintiffs' admissions that the trailers have been returned, Plaintiffs conclusively establishes that no threat of repetition exists by Mr. Jager or UnitedWS. Therefore, Plaintiffs fail to state a RICO claim because they have not sufficiently plead facts under either the close-ended or open-ended inquiry and as a result cannot support the continuity-plus test.

**2. Plaintiffs fail to plead that Mr. Jager or UnitedWS conducted or participated in the alleged enterprise's affairs.**

The first element demands proof that a defendant "conduct[ed] or participate[d] ... in the conduct of [the] enterprise's affairs." 18 U.S.C. § 1962(c). In <u>Reves v. Ernst & Young</u>, the Supreme Court explained that this element requires showing that a defendant "participate[d] in the operation or management of the enterprise itself." <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 185, (1993). According to the Supreme Court, in order to have conducted or participated in the enterprise's affairs under § 1962(c), the person charged must have had some part in directing those affairs. *See* <u>Reves,</u> 507 U.S. 179. In other words, she must have participated in the operation or the

11

management of the enterprise itself, and she must have asserted some control over the enterprise. Slaney, 244 F.3d 598.

The RICO statute does not penalize tangential involvement in an enterprise, and allegations that a defendant had a business relationship with the putative RICO enterprise or that a defendant performed services for that enterprise do not suffice. Muskegan Hotels, LLC, 986 F.3d 699. Simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself." Goren v. New Vision International, 156 F.3d 721, 728 (7th Cir. 1998).

In the instant action, Plaintiffs fail to allege that Mr. Jager or UnitedWS conducted or participated in the enterprise's affairs under § 1962(c). Specifically, Plaintiffs allege that the actual perpetrator of the alleged identity fraud is Djurkovic. In fact, Mr. Jager and UnitedWS alleged involvement occurs approximately five months after the alleged identify theft allegedly occurred. Ultimately, Plaintiffs' Complaint is devoid of any facts alleging that Mr. Jager or UnitedWS participated in the operation or the management of the enterprise itself. Plaintiffs' Complaint is devoid of any facts alleging that Mr. Jager or UnitedWS directed the operations of the alleged enterprise. Further Plaintiffs' Complaint is devoid of any facts alleging that Mr. Jager or UnitedWS asserted some control over the alleged enterprise. At best, Plaintiffs allege that Mr. Jager and UnitedWS had a brief business relationship with an alleged putative RICO enterprise by unknowingly leasing trailers. Ultimately, upon discovering the ownership dispute surrounding the trailers Mr. Jager and UnitedWS returned the trailers to the lessor, AAA. Ultimately, the RICO statute simply does not penalize this sort of tangential involvement. Therefore, Plaintiffs fail to

state a RICO claim because they have not sufficiently plead facts establishing that Mr. Jager or UnitedWS conducted or participated in the alleged enterprise's affairs.

**III. Count I (RICO 18 U.S.C. § 1962(c)) of Plaintiffs' Complaint must be dismissed against Mr. Jager and UnitedWS because Plaintiffs cannot establish that Mr. Jager or UnitedWS caused any alleged injury.**

To recover on its section 1962(c) a plaintiff must demonstrate that it was injured in its business or property (2) by reason of (3) the defendants' violation of section 1962. Med. Mut. of Ohio v. Abbvie Inc. MDL No. 2545, at *18 (N.D. Ill. Feb. 14, 2019) citing DeGuelle v. Camilli, 664 F.3d 192, 198 (7th Cir. 2011); and citing Armada, 885 F.3d at 1093. The Supreme Court has interpreted the Act to require a civil RICO plaintiff to show that defendants' section 1962 violations were both the but-for and proximate causes of the plaintiff's injury. Id. citing Hemi Grp., LLC v. City of New York, 559 U.S. 1, 9 (2010); Holmes v. Sec. Investor Protection Corp., 503 U.S. 258, 267-68 (1992); DeGuelle, 664 F.3d at 199. In order to recover under RICO, the plaintiff must establish proximate causation. Grove Fresh Distribs., Inc. v. Flavor Fresh Foods, Inc., 720 F. Supp. 714, 716-17 (N.D. Ill. 1989). Proximate cause under RICO thus demands "some direct relation between the injury asserted and the injurious conduct alleged." Holmes, 503 U.S. at 268. A link that is too remote, purely contingent, or indirect is insufficient. Craigville Tel. Co. v. T-Mobile USA Inc., No. 19 C 7190, at *16 (N.D. Ill. Nov. 16, 2020) citing Hemi Grp., 559 U.S. at 9.

In the instant action, Plaintiffs' Complaint is devoid of any facts that Mr. Jager or UnitedWS specifically injured Plaintiff. In fact, Plaintiffs' Complaint establishes that Mr. Jager and UnitedWS were not at all involved until approximately five months after Djurkovic allegedly perpetrated the alleged identity theft. In this regard, Mr. Jager and UnitedWS could not be the proximate cause of Plaintiffs' alleged injuries because they were not involved until after Plaintiffs

were allegedly injured. Further, Plaintiffs fail to explain how Mr. Jager's and UnitedWS' after-the-fact involvement specifically caused their alleged injuries. Ultimately, Plaintiffs' claim for damages against Mr. Jager and UnitedWS is fundamentally flawed in that Plaintiffs simply attempt to bootstrap Djurkovic's action as Mr. Jager and UnitedWS actions, as a means of improperly impose liability. Yet, this approach is insufficient, too remote, and purely contingent. Simply stated, there is no causal connection between the alleged actions of Mr. Jager and UnitedWS any concrete financial loss. As a result, Plaintiffs' Complaint against Mr. Jager and UnitedWS must be dismissed.

## CONCLUSION

Based on the foregoing, Defendants, Boris Jager and UnitedWS, respectfully request that this Court grant their Motion to Dismiss with prejudice.

Dated: February 21, 2022.

Respectfully submitted,

BORIS JAGER and UNITEDWS

By: /s/ Philip Fornaro
One of the Defendants' Attorneys

Philip Fornaro
Fornaro Law
1022 South La Grange Road
La Grange, IL 60525
(708) 639.4320 – Telephone
philip@fornarolaw.com
ARDC Number 6229260