IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IVAN MARKOVIC and GMT LOGISTICS, INC., | |
| Plaintiffs, | Case No. 21-cv-06628 |
| v. | Judge Mary M. Rowland |
| TRU FUNDING LLC, et al., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff GMT Logistics, Inc. and Ivan Markovic filed this action alleging that Defendants conspired to defraud Plaintiffs and steal the identity of Plaintiffs' trucking business. Plaintiffs bring federal claims under 18 U.S.C. §§ 1962(c)–(d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO") as well as state-law claims including claims of negligence and conversion. Defendants have all moved to dismiss Plaintiffs' complaint. For the reasons stated herein, Defendants' Motions to Dismiss [45, 46, 53] are granted.

    **I.   Background**

This Court accepts as true the following facts from the operative complaint (Dkt. 34 "Compl."). *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

According to the amended complaint, Plaintiff Ivan Markovic solely owned and operated a trucking company, Plaintiff GMT Logistics, Inc. ("GMT"), incorporated and located in Missouri. Compl. [34] ¶ 3. Before incorporating the company in 2019, Markovic was the only driver with one truck, making long and short haul trips

1

throughout the United States. *Id.* ¶ 14. In 2008, Markovic met Giuliano Djurkovic in Chicago. *Id.* ¶ 15. Between 2008 and 2017, Markovic and Giuliano kept in touch and eventually became friends; in 2018 or 2019, Djurkovic told Markovic he needed work and Markovic helped him get some trucking jobs. *Id.* ¶¶ 15–16. Djurkovic was neither an employee nor an independent contractor of Markovic or GMT, although Markovic noticed that Djurkovic said he was driving his own truck but was seldom working. *Id.* ¶ 17. In spring 2020, unbeknownst to Markovic, Djurkovic contacted a paralegal and asked for the law firm's help with "hiding money." *Id.* ¶ 20. The law firm refused. *Id.* ¶ 21.

In late December 2020 while he was in Serbia, Markovic began receiving notices from PNC Bank and Verizon of past due account notices with inexplicable balances, and Markovic called his PNC banker, Defendant Tomislav Todorovic. *Id.* ¶ 22. On or about December 22, 2020, Todorovic (or "Toma"), initially appeared to be surprised by Markovic's call. *Id.* ¶ 23. Markovic asked Todorovic to check his accounts as he believed the notices were in error. *Id.*. After making some inquiries through the State of Missouri website, Markovic discovered UCC filings for new loans issued to GMT while Markovic was out of the country, and saw unfamiliar addresses for GMT on the documents and multiple "hard inquiries" for credit. *Id.* ¶ 25. Markovic immediately returned to the U.S. *Id.*

In February 2021, Markovic learned information indicating that GMT had received a loan disbursement relating to an SBA loan in the amount of $150,000 issued to GMT using a forged e-signature "Ivan Markovic" and a wrong address for

2

GMT. *Id.* ¶ 34. The destination of the loan disbursement and documentation was "PNC Bank." *Id.* Meeting with Markovic, Todorovic told him that he should "leave it alone" and not pursue Djurkovic, saying "they hired a hitman" to kill Markovic. *Id.* ¶ 36. Also in February 2021, Markovic discovered his Verizon phone password had changed and believed there was fraud on his account. *Id.* ¶ 40.

In May 2021, Markovic met Boris Jager, owner of UnitedWS, and told Jager about the identity theft. *Id.* ¶¶ 46–47. Markovic did not know that Djurkovic had been working for UnitedWS. *Id.* ¶ 48. As part of the identity theft, AAA leased five trailers to United WS in a fraudulent transaction in which documents contained Markovic's forged signature. *Id.* ¶¶ 57, 68. Alex Petrusevski is the AAA Manager Plaintiffs allege was involved in this transaction. *Id.* ¶ 50. In addition, according to Plaintiffs, AAA and TRU Funding have the same owners and/or executives, Antonije Keljevic and Vlad Kostic. *Id.* ¶ 56. Investigating the identity theft, Markovic found a UCC-1 Financing Statement for a loan of $250,000 filed by TRU Funding. *Id.* ¶ 51. Djurkovic forged Markovic's digital signature for this loan. *Id.* ¶ 53.

Plaintiffs allege that Defendants opened lines of credit and obtained multiple PPP loans in the name of GMT and similar names that Markovic did not apply for or request. *Id.* ¶¶ 71–72. Plaintiffs claim that "[a]cting alone or with Defendants and other unknown accomplices, Djurkovic entered into multiple contracts on behalf of GMT Logistics Inc. to obtain cash and loan proceeds, and purchased 5 trailers and 2 trucks that were immediately transferred to AAA for resale and leasing." *Id.* ¶ 83. In

short, "Djurkovic assumed the identity of Markovic and his company GMT Logistics LLC" in order to defraud Plaintiffs. *Id.* ¶ 81.

In this suit, Plaintiffs bring the following claims: violation of RICO, 18 U.S.C. § 1962(c) (against Djurkovic) (Count I), RICO Conspiracy 18 U.S.C. § 1962(d)) (against Djurkovic, PNC Bank and Todorovic/Boskovic, TRU Funding, Petrusevski, UnitedWS and Jager, AAA, Kostic and Keljevic) (Count II), negligence (against PNC Bank, Todorovic, and Boskovic) (Count III), negligence (against AAA and TRU Funding) (Count IV), negligence (against Verizon) (Count V), injunctive relief, disgorgement, and constructive trust (against Djurkovic, AAA, and TRU Funding) (Count VI), and conversion and taxes (against Djurkovic) (Count VII).

Plaintiffs bring Count I against Djurkovic only. The docket reflects that Djurkovic was never served. The Court previously dismissed him without prejudice pursuant to Federal Rule of Civil Procedure 4(m) in March 2022. (Dkt. 20). The parties jointly confirmed in their status report (Dkt. 62) that Djurkovic has never been served. Count I is therefore dismissed without prejudice.

**II. Standard**

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing

4

that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

For fraud claims, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). The plaintiff must "plead with particularity the circumstances constituting fraud" and allege the "who, what, when, where, and how" of the alleged conduct. *Id.* Rule 9(b) applies to allegations of fraud in a civil RICO complaint. *Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 587 n.56 (7th Cir. 2017).

### III. Analysis

Defendants all move for dismissal of Plaintiffs' amended complaint. The AAA Defendants[1] argue that Plaintiffs fail to state claims for a RICO conspiracy, negligence, or equitable relief. The PNC Defendants argue that: (1) the RICO claim fails as a matter of law; (2) the negligence claim fails as a matter of law; and (3) Plaintiffs have no basis to name PNC as a defendant. The UnitedWS Defendants also move for dismissal on the grounds that Plaintiffs (1) failed to plead the elements of their RICO conspiracy claim and with the particularity required under Rule 9(b), and (2) cannot establish that Mr. Jager or UnitedWS caused any injury. Because all Defendants argue that Plaintiffs have failed to state a RICO conspiracy claim, the Court begins its analysis there.

### A. RICO

RICO "does not cover all instances of wrongdoing" and "is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006). Subsection (d) of RICO makes it unlawful to conspire to violate any of the substantive provisions (subsections (a), (b), or (c)) of the statute. 18 U.S.C. § 1962(d). "A violation of 18 U.S.C. § 1962(d) is contingent on an agreement to 'participate in an endeavor which, if completed, would

---

[1] For ease of reference, the Court refers to PNC Financial Services Group, Inc.; PNC Bank, N.A.; Tomislav Todorovic; and Igor Boskovicas as the "PNC Defendants", and AAA Freight, Inc., AAA Truck Sales, LLC, AAA Equipment, LLC, AAA Holding Group, LLC, Antonije Keljevic, Alex Petrusevski, Vlad Kostic, and TRU Funding, LLC as the "AAA Defendants". UnitedWS and Mr. Jager are the "UnitedWS Defendants." Plaintiffs responded to the UnitedWS Defendants' motion [59], to the PNC Defendants' motion [68], and to the AA Defendants' motion [70].

6

satisfy all of the elements of a substantive violation of the substantive [RICO] statute.'" *Saleh v. Merch.*, No. 14-CV-09186, 2018 WL 287748, at *4 (N.D. Ill. Jan. 4, 2018) (quoting *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998)). In this case the substantive provision at issue is (c), which prohibits any person associated with an enterprise from participating in the conduct of the enterprise's affairs through a pattern of racketeering activity. *See* Compl. ¶¶ 85, 88, 118.

A claim for RICO conspiracy requires a plaintiff to allege that: "(1) the defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity, and (2) that the defendant further agreed that someone would commit at least two predicate acts to accomplish those goals." *DeGuelle v. Camilli*, 664 F.3d 192, 204 (7th Cir. 2011) (quoting *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 600 (7th Cir. 2001)). "The absence of either of these is fatal to the claim." *Domanus v. Locke Lord LLP*, 847 F.3d 469, 481 (7th Cir. 2017). In addition, "[a]llegations of fraud in a RICO complaint are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *Roppo*, 869 F.3d at 592.

### B. Plaintiffs Fail to Allege a RICO Conspiracy Claim

The Court agrees with Defendants that Plaintiffs have not stated a RICO conspiracy claim.

#### *Enterprise*

Defendants first contend that Plaintiffs failed to sufficiently allege that they were engaged in a RICO enterprise. Under § 1962(c), a plaintiff must show "(1) conduct (2)

7

of an enterprise (3) through a pattern (4) of racketeering activity." *Menzies v. Seyfarth Shaw LLP,* 943 F.3d 328, 336 (7th Cir. 2019) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496–97 (1985)). A plaintiff cannot allege these elements in a "boilerplate fashion" but must "allege sufficient facts to support each element." *Goren*, 156 F.3d at 727. Further, "it is not enough to allege that a defendant was part of the enterprise; they must plausibly allege that a defendant conducted the affairs *of the enterprise*, not just its own." *Saleh*, 2018 WL 287748, at *4 (emphasis added).

Plaintiffs' complaint does not plausibly allege that Defendants acted in concert on behalf of a RICO enterprise; at most it alleges that Defendants pursued their own interests in various business transactions. *See, e.g., Green v. Morningstar Inv. Mgmt. LLC,* No. 17 C 5652, 2019 WL 216538, at *3 (N.D. Ill. Jan. 16, 2019) ("[R]egular corporate . . . transactions show only that 'the defendants had a commercial relationship, not that they had joined together to create a distinct entity'") (citing *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 855 (7th Cir. 2013)). Moreover, "merely participating in a fraud cannot be equated with being a member of a RICO enterprise." *Saleh*, 2018 WL 287748, at *8.

Plaintiffs respond that this is not a case of Defendants having only a "commercial relationship" because the defendants "were not doing business with GMT Logistics, Inc., which was completely unaware of the transactions." (Dkt. 70 at 4). Plaintiffs stress that they "engaged in zero business transactions with these Movants." *Id.* However the question is whether *defendants* "'conducted the affairs of an enterprise."

8

*Walgreen*, 719 F.3d at 853. It is immaterial whether *Plaintiffs* were also engaged in a business relationship with Defendants. A review of the complaint's allegations show that this case is similar to *Walgreen*—the complaint "contains ample allegations of misconduct by [defendants]," but "it falls short of plausibly alleging the type of concerted activity undertaken on behalf of an identifiable enterprise necessary to a successful RICO claim." 719 F.3d at 850–51. Plaintiffs' RICO claim fails for this reason alone.

### *Pattern of Racketeering Activity*

Defendants also argue that Plaintiffs failed to allege a pattern of racketeering activity. A "pattern of racketeering activity" requires "at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5). In their complaint, Plaintiffs allege that Defendants engaged in wire fraud and the "fraudulent schemes involved using the interstate wires to defraud Plaintiffs of the value of GMT Logistics, including its creditworthiness, to obtain millions of dollars from the illicit loans and resulting leasing activity of 7 trucks and trailers." Compl. ¶ 100. The complaint alleges that "[a]ll predicate acts had the same purpose of defrauding Plaintiffs of hundreds of thousands of dollars, all for the personal enrichment of the Defendant and his Serbian associates," and "the pattern of racketeering activity is shown by the threat of continued activity as [] Djurkovic and his associates has repeatedly engaged in the illegal and illicit activities." *Id.* ¶¶ 115, 116.

Because Plaintiffs allege predicate acts of fraud, they "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

9

Plaintiffs argue that the "Seventh Circuit has not required the pleading of claims under § 1962(d) with particularity." (Dkt. 68 at 6). However the Seventh Circuit has expressly stated that fraud allegations in a RICO complaint "are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *Roppo*, 869 F.3d at 587. Where "the alleged predicate acts of racketeering involve fraud, the complaint must describe the 'who, what, when, where, and how' of the fraudulent activity to meet the heightened pleading standard demanded by Rule 9(b)." *Muskegan Hotels, LLC v. Patel*, 986 F.3d 692, 698 (7th Cir. 2021) (quoting *Menzies*, 943 F.3d at 338); *see also Stoller v. Fumo*, No. 19 C 02546, 2020 WL 2404879, at *5 (N.D. Ill. May 12, 2020) (collecting cases). Plaintiffs must provide "precision and some measure of substantiation" to the fraud allegations. *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016)).

Plaintiffs fall short of meeting this heightened pleading standard. For example, as to PNC Bank, Plaintiffs do not allege any specific wrongdoing. Instead they broadly allege, for example, that "[a]t some point after Plaintiffs established the PNC account, PNC Bank and its employee Todorovic created a falsified signature card on Plaintiff's account." Compl. ¶ 122. Plaintiffs also vaguely allege that certain "events could not have occurred but for the cooperation of PNC." *Id*. ¶ 127. These conclusory allegations "fail to specify the time, place and content" of any misrepresentations or action by the corporate defendants and "therefore fall short of the particularity demanded by Rule 9(b)." *Goren*, 156 F.3d at 730. Plaintiffs also allege that "Djurkovic and his associates ha[ve] repeatedly engaged in the illegal and illicit activities," and Djurkovic's

racketeering activity is seen in his "frequent and regular contacts with the Conspiracy Defendants." Compl. ¶ 116. These allegations lack detail and do not meet the specificity standard required under Rule 9(b).

Plaintiffs' allegations also violate the principle that a plaintiff cannot treat "all the defendants as one," and thus, "lumping together of defendants is clearly insufficient to state a RICO claim under § 1962(c)." *Goren*, 156 F.3d at 730 (internal quotation marks omitted). In addition, the complaint contains multiple allegations made "on information and belief," which do not suffice under Rule 9(b). *See e.g.* Compl. ¶ 71–73, 94, 169. Thus Plaintiffs fail to sufficiently plead that Defendants engaged in a pattern of racketeering activity.

### *Agreement*

Finally, "the touchstone of liability under § 1962(d) is an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute." *Goren*, 156 F.3d at 732. "[T]he essence of a RICO conspiracy violation is the agreement itself." *Inteliquent, Inc. v. Free Conferencing Corp.*, 503 F. Supp. 3d 608, 632 (N.D. Ill. 2020). To adequately allege this element, Plaintiff must assert an "agreement by each defendant to the commission (by someone) of two specific predicate acts on behalf of the enterprise." *Goren*, 156 F.3d at 732. The facts alleged here do not raise a reasonable inference of an agreement.

Plaintiffs assert that the Court may infer an agreement in a conspiracy case and here, Djurkovic "could not have done the multiple acts alone" and the Court can infer that each Defendant "would assist Djurkovic to accomplish [his] goals." (Dkt. 70 at 2–

11

3; Dkt. 68 at 8). The complaint alleges in a conclusory fashion for example that the "conspirators agreed that a co-conspirator (Djurkovic) would conduct or participate in the affairs of the Enterprise through a pattern of racketeering." Compl. ¶ 118. This does not allow the Court to reasonably infer that Defendants formed an agreement to commit fraud against Plaintiffs. Plaintiffs also contend in their response brief that Defendants "rely on facts that are disputed," and they "must offer their documentation of the transactions with Djurkovic." (Dkt. 70 at 5). But the Court's inquiry on a motion to dismiss focuses on whether Plaintiffs have stated a claim against Defendants at this stage. It is not whether Defendants have provided evidence to refute Plaintiff's claims. *See Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990); *Rutherford v. Judge & Dolph Ltd.*, 707 F.3d 710, 713–14 (7th Cir. 2013).

Moreover, Plaintiffs' response to Defendants' arguments that Plaintiffs failed to sufficiently allege an agreement for the RICO conspiracy claim is underdeveloped, and thus waived. (*See* Dkt. 70). *See County of McHenry v. Ins. Co. of the W.*, 438 F.3d 813, 818 (7th Cir. 2006) ("When presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action.") (quotation omitted); *see also Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (arguments that are "underdeveloped, conclusory, or unsupported by law" may be waived on appeal, and it "is the parties' responsibility to allege facts and indicate their relevance under the correct legal standard.") (quotation omitted).[2]

---

[2] The PNC Defendants argue that Plaintiffs lack standing to sue PNC Financial Services and PNC Financial Services should be dismissed under Rule 12(b)(1). (Dkt. 47 at 22). There are

12

For these reasons, Plaintiffs fail to adequately state a RICO conspiracy claim. This Court therefore dismisses that claim.

### C. Plaintiffs Do Not Allege that UnitedWS Defendants Caused Any Injury

The UnitedWS Defendants argue that Plaintiffs' complaint does not allege that Mr. Jager or UnitedWS injured Plaintiffs. A review of the complaint shows no particular injury to Plaintiffs caused by Mr. Jager or UnitedWS. "A RICO conspiracy plaintiff must 'allege injury from an act that is . . . independently wrongful under RICO.'" *DeGuelle*, 664 F.3d at 204 (quoting *Beck v. Prupis*, 529 U.S. 494, 495, (2000)). *Bobb v. Swartz-Retson P.C.*, No. 17-CV-7694, 2018 WL 4384292, at *8 (N.D. Ill. Sept. 14, 2018) (a plaintiff must allege a "direct relation between the injury asserted and the injurious conduct alleged") (quotation omitted).

A civil RICO plaintiff must show that defendants' section 1962 violations were both the but-for and proximate causes of the plaintiff's injury. *Id.* at 199, 204. The complaint contains no allegations suggesting that Jager or UnitedWS committed acts that are independently wrongful under RICO and that caused Plaintiffs' alleged injury. Plaintiffs' response (Dkt. 59) appears to imply that the alleged injury arose generally from the enterprise, but that is insufficient under RICO. *See DeGuelle*, 664 F.3d at 204; *Bobb*, 2018 WL 4384292, at *8.

### D. Plaintiffs' State-Law Claims

---

no specific allegations against PNC Financial Services in the operative complaint. And Plaintiffs fail to respond to this argument (Dkt. 68), thus waiving it. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012). PNC Financial Services is dismissed for this additional reason.

13

Plaintiffs bring state-law claims in Counts III through VII. However the Court has dismissed Plaintiffs' RICO claims in Counts I and II. Where "the sole basis for invoking federal jurisdiction is non-existent . . . the federal courts should not exercise supplemental jurisdiction over his remaining state law claims." *Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 300 (7th Cir. 2003). It is well-settled that when "the federal claims drop out before trial," the court generally "should relinquish jurisdiction over the state-law claims." *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007). Plaintiffs do not make any argument explaining why the Court should exercise supplemental jurisdiction over the state law claims and the Court sees no reason to do so. *See Drobny v. JP Morgan Chase Bank, NA*, 929 F. Supp. 2d 839, 850–51 (N.D. Ill. 2013) (declining to exercise supplemental jurisdiction over state-law claims after dismissing plaintiff's RICO claims).

Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367(c)(3) and dismisses the state-law claims without prejudice.

**E. Dismissal with leave to replead**

Plaintiffs have already amended their complaint once in this case, and do not request to amend their complaint again. Nevertheless, generally an initial dismissal for failure to state a claim is without prejudice unless it is certain from the face of the complaint that any amendment would be futile. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015). The Court is concerned that any amendment would be futile, particularly with the heightened

pleadings requirements under Rule 9, and would not be a good use of the parties' or the Court's time and resources. But the Court cannot say at this juncture that amendment would certainly be futile. Plaintiffs are therefore granted leave to file an amended complaint if counsel can do so in accordance with counsel's Rule 11 obligations and this Court's opinion.

### IV. Conclusion

For the stated reasons, Defendants' Motions to Dismiss [45, 46, 53] are granted. Plaintiffs' complaint is dismissed without prejudice and with leave to amend. If no amended complaint is filed on or before April 17, 2023, the dismissal without prejudice will automatically convert to a dismissal with prejudice (for the federal claims only) and judgment will enter.

E N T E R:

Dated: March 23, 2023

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

15